**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Donovan Dejuan Brown, | Case No. 16-cv-0366 (SRN/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Steve Hammer; Lt. Bob Plumm; Coral Krippner; Richard Neururer; Jason Miller; Mary Stahl-Swanson; Connie Hartwig; Lara Jensen; Cherl Cole; John Agrimson; Michelle Smith; Theresa Wohlhaefer; Jeff Dansky; Karin McCarthy; and Pete Orput, | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

Plaintiff Donovan Dejuan Brown, a state prisoner, brings this action under

42 U.S.C. § 1983 for alleged violations of his constitutional rights.  This matter has been

referred to this Court pursuant to 28 U.S.C. § 636 and Local Rule 72.1 for screening

pursuant to 28 U.S.C. § 1915A.  For the reasons discussed below, it is recommended that

this matter be summarily dismissed.

**I.  Procedural History**

Before turning to the allegations in Brown's Complaint [Doc. No. 1], the Court

will briefly recount the procedural history of this case.

On February 16, 2016, Brown commenced this action alleging violations of his

constitutional rights by state officials.  Brown did not pay the filing fee for this action, but

instead applied for *in forma pauperis* ("IFP") status.  [Doc. No. 2.]  Because Brown is a

prisoner, his IFP application was subject to the requirements of 28 U.S.C. § 1915(b),

which provides that:

> (1) . . . if a prisoner brings a civil action . . . in forma
> pauperis, the prisoner shall be required to pay the full amount
> of a filing fee.  The court shall assess and, when funds exist,
> collect, as a partial payment of any court fees required by law,
> an initial partial filing fee of 20 percent of the greater of —
>
>> (A) the average monthly deposits to the
>> prisoner's account; or
>>
>> (B) the average monthly balance in the
>> prisoner's account for the 6-month period
>> immediately preceding the filing of the
>> complaint . . . .
>
> (2) After payment of the initial partial filing fee, the prisoner
> shall be required to make monthly payments of 20 percent of
> the preceding month's income credited to the prisoner's
> account.  The agency having custody of the prisoner shall
> forward payments from the prisoner's account to the clerk of
> the court each time the amount in the account exceeds $10
> until the filing fees are paid.
>
> (3) In no event shall the filing fee collected exceed the
> amount of fees permitted by statute for the commencement of
> a civil action . . . .
>
> (4) In no event shall a prisoner be prohibited from bringing a
> civil action . . . for the reason that the prisoner has no assets
> and no means by which to pay the initial partial filing fee.

Brown initially did not provide adequate financial information for this Court to

calculate his initial partial filing fee, and the Court ordered Brown to submit the required

2

information.  (Order at 3, Feb. 29, 2016 [Doc. No. 9].)  Brown did so on March 23, 2016

[Doc. No. 11], and upon review of the financial information, this Court calculated that

Brown's initial partial filing fee, under the formula established by § 1915(b)(1), would be

$5.88.  (Order at 3, Apr. 21, 2016 [Doc. No. 13].)  Brown did not pay the filing fee as

directed, however, and the Court therefore recommended dismissal for failure to

prosecute.  (R. & R. at 1-2, June 6, 2016 [Doc. No. 16].)

Brown filed an objection to the R&R on June 23, 2016 [Doc. No. 17] and

submitted new financial information establishing that he no longer earned income and

that he did not have sufficient assets to pay the calculated filing fee [Doc. No. 19].  Based

on this updated information, Brown was adjudged to have "no assets and no means" to

pay the initial partial filing fee, 28 U.S.C. § 1915(b)(4), and was permitted to proceed

with this litigation notwithstanding his nonpayment of the initial partial filing fee.  (Order

at 4, June 27, 2016 [Doc. No. 21].)

This case now returns before this Court on several matters.  First, under 28 U.S.C.

§ 1915A(a), "[t]he court shall review, before docketing, if feasible or, in any event, as

soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity."

Brown's Complaint had not yet been screened pursuant to § 1915A, and this screening

must occur before this action may proceed.  Second, several motions filed by Brown

(including Brown's IFP applications, a motion for a temporary restraining order and

3

preliminary injunction, a motion for appointment of counsel, and a motion for copies of

the documents filed in this case) have been referred to this Court for further

consideration.  Before turning to those matters, however, the Court will first set forth the

allegations and claims in Brown's Complaint.

## II. Brown's Complaint

Brown alleges that on May 4, 2015, he was placed in administrative segregation

on allegations of fighting with another inmate.  (Compl. at 6.)  While in segregation,

Brown presented a registered nurse at the prison with a request for medical care.  (*Id.*)

Although Brown does not allege specifically what medical problems he was facing at the

time, the nurse noted that Brown had "redness on his 4th right finger" but no bruising or

swelling.  (*Id.*)  Brown also alleges that the nurse refused to provide medical treatment

until Brown agreed to sign what he refers to as a "wavier's [sic] fee" document, which he

did eventually sign.  (*Id.*)

After being placed in segregation, Brown wrote a kite informing prison staff of

possible defenses to the charges that he was involved in the fight.  (*Id*. at 7.)  The kite was

interpreted by prison guards as a confession to assaulting the inmate with whom Brown

was fighting.  (*Id.*)  Brown was placed under arrest for the offense and later criminally

charged with third-degree assault in Washington County, Minnesota.  (*Id*.; *see also*

Compl. Ex. 1 [Doc. No. 1-1].)

At least two consequences followed from the criminal charges, according to the

Complaint.  First, Brown was transferred to a more restrictive facility.  Second, Brown

was convicted after a jury trial in Washington County on the third-degree assault charge.

Brown alleges these consequences were unlawful, both substantively (because he did not

commit the assault) and procedurally (because he was denied due process during the

proceedings that led to those outcomes).

Based on those allegations, Brown brings four claims for relief: (1) denial of

medical care; (2) false arrest; (3) denial of due process; and (4) "false imprisonment/

illegal extraditement [sic]/malicious prosecution."  (Compl. at 6-9.)  Each of those claims

is brought pursuant to § 1983, although certain of the claims (for example, for false arrest

and false imprisonment) appear to be more appropriately raised under state law.[1]  Brown

seeks as a remedy the immediate expungement of the prison disciplinary proceedings,

transfer back to less restrictive prison conditions, an injunction against further criminal

prosecution, monetary damages, and a tetanus shot.  (*Id*. at 20.)

### III.  Standard of Review

Under § 1915A(b), "[o]n review" of a prisoner complaint, "the court shall identify

---

[1] As explained below, this Court recommends dismissal of each of Brown's federal
claims for relief.  There is no basis pleaded in the complaint for the Court's original
jurisdiction over any state-law claims that might be raised by Brown in this action.  The
Eighth Circuit has instructed courts to not exercise supplemental jurisdiction over state-
law claims where, as recommended here, all federal claims are dismissed prior to trial.
*See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008).  In any event,
as also explained below, the claims raised by Brown most amenable to interpretation as
state-law claims (the claims for false imprisonment and false arrest) are barred by the
doctrine set forth in in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Whether for lack of
jurisdiction or based on *Heck*, those claims should be dismissed without prejudice.

cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## IV.  Review under § 1915A

### A.  Denial of Medical Care

Brown first alleges that prison officials denied him medical care after the altercation that set into motion the events at issue in the complaint. (*See* Compl. at 6.) Although Brown does not describe the claim as such, this Court interprets Brown's claim of denial of medical care as a claim of deliberate indifference to his medical needs in

violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"A prima facie case alleging . . . deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need."  *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007).  "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'"  *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478 (8th Cir. 2008) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

Brown has not plausibly alleged the existence of an objectively serious medical need.  According to his Complaint, the only abnormality detected in the medical examination following the fight was "redness on his 4th right finger" with "[n]o bruising or swelling at this time."  (Compl. at 6.)  Brown does not allege that he actually suffered an injury to his finger any more serious than this "redness" (with no bruising or swelling) reported by the examining nurse.  Further, Brown does not allege that any physician or other medical professional ever diagnosed this "redness" as needing treatment (indeed, the most plausible inference to draw from the complaint is that the examining nurse concluded that no treatment was necessary), and there is no plausible basis alleged in the Complaint to believe that this "redness" was so serious that a layperson would easily recognize the need for a doctor to intervene.

Although not mentioned in the section of his Complaint describing his denial-of-medical-care claim, Brown also suggests in the "request for relief" section of his complaint that prison officials refused to administer a tetanus shot following the fight. (*See* Compl. at 20 ("[T]he plaintiff has not [even] been given a tetanus shot after an inmate on inmate assault he would like to be treated for such.").)  But there is no plausible allegation that Brown in fact was exposed to tetanus, or even that there is a medical or physiological reason for believing that he *might* have been exposed to tetanus. It appears that Brown simply believes that a tetanus shot is an appropriate course of treatment after all prison fights.  There is no reason to infer that this is true from the allegations in the Complaint or the law.

Finally, Brown suggests that he was denied medical care entirely until he signed what he refers to as a "wavier's [sic] fee."  (Compl. at 6.)  This allegation relates not to whether Brown had an objectively serious medical need—as just explained, the Complaint does not adequately allege that he did—but to whether prison officials actually knew of, but deliberately disregarded, such a need.  This aspect of the deliberate-indifference claim is also insufficiently pleaded.  The nature of the "wavier's fee" is not obvious from the complaint, but in the circumstances of this case, a prison official's requirement that this "wavier's fee" be signed by Brown before he received medical treatment could not have restricted Brown's access to treatment, because, by his own allegations, he in fact *signed* the document during his initial examination and was

thereafter examined by a nurse.  (*Id.*)  Regardless of what theoretically might have

happened had Brown not signed the document, he did sign it, and he received a medical

examination upon signing it.[2]  Because Brown has failed to allege both the objective and

subjective prongs of his deliberate-indifference claim, the Court recommends that this

claim be dismissed.

### B.  False Arrest

    Brown next alleges that he was falsely arrested in connection with the prison fight.

This claim is barred by the principles discussed in *Heck v. Humphrey*, 512 U.S. 477

(1994).  In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by
> actions whose unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas
> corpus.  A claim for damages bearing that relationship to a
> conviction or sentence that has not been so invalidated is not
> cognizable under § 1983.

    *Id*. at 486-87 (footnote and citation omitted); *cf. Wallace v. Kato*, 549 U.S. 384,

---

[2] At bottom, it appears that Brown simply disagrees with the conservative course of
treatment offered by prison staff.  But "inmates have no constitutional right to receive a
particular or requested course of treatment, and prison doctors remain free to exercise
their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239
(8th Cir. 1997).  There is no plausible allegation in the Complaint that Brown actually
suffers from an objectively serious medical condition, much less that prison officials
knew or should have known of such a condition.

388-90 (2007) (recognizing application of *Heck* to false-arrest claim).  Brown has been

convicted after a jury trial on the charge for which he was arrested.  (*See* Compl. Ex. 1);

*State of Minnesota v. Brown*, No. 82-CR-15-2501 (Minn. Dist. Ct. sentenced March 11,

2016).  By all indications, Brown did not appeal his conviction, and the time for doing so

has expired.  Success on the merits of his false-arrest claim would call into question the

validity of a criminal conviction that has become final.  Accordingly, *Heck* precludes this

claim until Brown demonstrates that his conviction is, in fact, invalid, whether through a

petition for post-conviction relief in state court, a petition for a writ of habeas corpus in

federal court, or some other means.  Unless and until that conviction is invalidated,

however, Brown cannot bring claims predicated upon the invalidity of that conviction.

### C.  Denial of Due Process

Brown's third claim relates to alleged due-process violations during the prison

disciplinary proceedings that led to his transfer to a more restrictive facility.[3]  This is not

a viable claim for relief.  "[T]he Due Process Clause in and of itself [does not] protect a

duly convicted prisoner against transfer from one institution to another within the state

prison system.  Confinement in any of the State's institutions is within the normal limits

or range of custody which the conviction has authorized the State to impose."  *Saylor v.*

---

[3] Brown's due-process claim itself is focused squarely on the prison administrative proceedings, not his criminal proceedings.  (Compl. at 8.)  That said, Brown occasionally suggests in his Complaint and elsewhere that he does not believe that the criminal proceedings in Washington County comported with due process, either.  (*Id*. at 9.)  Like his false-arrest claim, this aspect of his due-process claim is precluded by *Heck*, as it necessarily implies the invalidity of his detention.

*Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016) (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A state may *create* a liberty interest, protected by the federal due process clause, in an entitlement to detention at a particular facility (or type of facility), but the State of Minnesota has not done so. *See Inmate 115235 v. Erickson*, No. C5-92-1117, 1992 WL 366017, at *1 (Minn. Ct. App. Dec. 15, 1992). Brown had no constitutional entitlement to a less-restrictive facility, and his claim that his transfer did not comport with federal due process therefore fails.

### D.  Other Claims

Brown's remaining claims fail for largely the same reasons already discussed and therefore can be dealt with briefly. His false-imprisonment claim, like his false-arrest claim, is precluded by *Heck*, as it is necessarily predicated on the supposed invalidity of his conviction. Until that conviction is actually invalidated, however, Brown cannot challenge the legality of his imprisonment through a civil-rights action. Much the same can be said of Brown's malicious-prosecution claim. *See Williams v. Schario*, 93 F.3d 527, 529 (8th Cir. 1996) (applying *Heck* to malicious-prosecution claim).

The final remaining claim, for "illegal extraditement [sic]" (Compl. at 9), is difficult to follow. It appears that Brown believes he was perhaps tricked into consenting to the Washington County district court's jurisdiction over his criminal proceedings. To the extent that this claim is not *Heck*-barred, it appears to be wholly frivolous. *See State v. Seeber*, No. A04-560, 2005 WL 406210, at *2 (Minn. Ct. App. Feb. 22, 2005)

11

("A district court has original jurisdiction over all criminal offenses committed within its
district.") (citing Minn. Const. art. VI, § 3; Minn. Stat. § 484.01, subd. 1).  Brown was
charged with committing a criminal offense in Washington County, and thus the courts of
Washington County had jurisdiction over the criminal proceedings following from that
charge.

### E.  Dismissal With or Without Prejudice

The only remaining question with respect to the Complaint is whether Brown's
claims should be dismissed *with* or *without* prejudice.  The Court recommends dismissal
without prejudice.  To the extent that Brown's claims are *Heck*-barred, those claims *must*
be dismissed without prejudice, in order to allow Brown to pursue these claims should his
conviction be invalidated in the future.  *See Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir.
1995) (per curiam) (dismissal of *Heck*-barred claim modified to be without prejudice).
Brown's remaining claims are, at least in theory, amenable to repleading.  Therefore, this
Court recommends that the entirety of Brown's complaint be dismissed without
prejudice.  The Court cautions, however, that it appears unlikely Brown will ever be able
to state a claim on which relief may be granted based solely on the events and allegations
at issue in the Complaint.

### V.  Remaining Motions

Brown's remaining motions mostly rise and fall with his Complaint, which, as
explained above, does not state a claim on which relief may be granted.  For example,

Brown requests appointment of counsel to pursue his claims [Doc. No. 5], but this request is moot in light of the recommendation of dismissal and thus should be denied without prejudice. Similarly, his pending IFP application [Doc. No. 11] should be denied, as the Complaint does not state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam).

Only two of Brown's pending motions merit more extended comment. First, Brown requests copies of the documents he has filed in this matter to ensure that prison officials have, in fact, mailed each of the documents he intended to submit. (Pl.'s Mot. Copies at 1-2 [Doc. No. 14].) Usually, the Clerk of Court charges litigants a nominal fee for copies of documents, but because Brown is indigent and the quantity of documents requested by Brown is not unreasonable, this Court will grant Brown's motion by separate order.

Second, Brown has filed a Motion for a Temporary Restraining Order and Preliminary Injunction [Doc. No. 3]. To the extent that Brown seeks injunctive relief based on the conduct alleged in the Complaint, that motion should be denied, as the allegations in the Complaint are "not enough to state a claim, let alone show the likelihood of success on the merits necessary for issuing a preliminary injunction." *Munt v. Larson*, No. 15-CV-0582 (SRN/SER), 2015 WL 5673108, at *12 (D. Minn. Sept. 23, 2015).

Brown's motion for a temporary restraining order or preliminary injunction is unusual, though, insofar as the relief requested extends far beyond the conduct alleged in the Complaint.  For example, with respect to his claim of denial of medical care, Brown's *Complaint* alleges injures of "redness" to his finger and, perhaps, suspected tetanus.  (*See* Compl. at 6, 20.)  In his motion, however, Brown alleges physical and mental pain from "an oral transmitted disease," inflamed lungs, and other physical ailments.  (Mot. TRO at 1.)  He also alleges that he has been held in administrative segregation without due process for 160 days.[4]  (*Id.* at 2.)

These claims do not appear in the Complaint.  "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Penn v. San Juan Hosp.*, 528 F.2d 1181, 1185 (10th Cir. 1975)).  This alone defeats Brown's request for preliminary injunctive relief on the grounds identified.  This Court also notes, however, that even if the allegations found only in the motion were treated as being contained within the scope of the Complaint, this Court would nevertheless recommend denial of the motion (and

---

[4] Brown also challenges the loss of good-time credit in his motion for a preliminary injunction. (Mot. TRO at 2.)  Because this claim relates to the *duration* of his confinement, not the *conditions* of his confinement, it must be raised in a petition for a writ of habeas corpus, not in a civil-rights action. *See, e.g.*, *Love v. Schoffman*, 142 F. App'x 278, 279 (8th Cir. 2005) (per curiam).  The Court cautions Brown that before raising any habeas claim in federal court, he must exhaust all available state remedies for his claim. *See* 28 U.S.C. § 2254(b), (c).

dismissal of the claims).  For one thing, these allegations are not brought against any

particular Defendant; it is therefore impossible to tell *who* Brown believes putatively

violated his constitutional rights in the manners described in the motion.  For another

thing, the conduct described in the motion does not rise to the level of a constitutional

violation.  Brown describes unpleasant symptoms he is experiencing, but he only

speculates as to whether those conditions are caused by an objectively serious medical

need.  Further, Brown does not allege how, exactly, any of the Defendants have denied

him medical care, except that believes the Defendants should be doing *something*

different to treat his conditions.  *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.

1997) ("[I]nmates have no constitutional right to receive a particular or requested course

of treatment, and prison doctors remain free to exercise their independent medical

judgment.").  Finally, the conditions of administrative segregation described by Brown in

his motion do not appear to rise to the level of an "atypical and significant hardship" for

due process purposes.  *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per

curiam) (collecting cases).

     In any event, because the allegations in Brown's Complaint do not amount to a

viable claim for relief, Brown's motion for a temporary restraining order and preliminary

injunction should be denied.


     Accordingly, based on the foregoing, and on all of the files, records, and

proceedings herein **IT IS HEREBY RECOMMENDED THAT**:

1.      This matter be **DISMISSED WITHOUT PREJUDICE** pursuant to

28 U.S.C. § 1915A.

2.      Plaintiff Donovan Dejuan Brown's applications to proceed *in forma*

*pauperis* [Doc. Nos. 2, 11] be **DENIED**.

3.      Brown's Motion for a Temporary Restraining Order and Preliminary

Injunction [Doc. No. 3] be **DENIED**.

4.      Brown's Motion for Appointment of Counsel [Doc. No. 5] be **DENIED AS**

**MOOT**.

Dated: July 5, 2016                       _s/ Hildy Bowbeer_
                                          HILDY BOWBEER
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report

and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.